ED. M. MOSS v. H. E. PATTERSON.

1. ELECTIONS — *Contest* — *Rejection of Votes.* In a contested election case, where a large number of witnesses are produced who testified to their age, residence, and length of residence in a particular voting precinct; that they voted for a certain candidate for county clerk at the election about which the contest arose; all questions and answers being without objection, it is error for the contest court to reject these votes, and not count them for the candidate for whom they were cast. A vote must be presumed to be legal until the contrary is shown.

2. REVIEW — *Objections Waived.* This court will not consider a motion to dismiss the petition in error because the transcript of the proceedings of a contest court is not properly authenticated, when such a motion was filed in the district court and then withdrawn, and there was no ruling thereon.

*Error from Harper District Court.*

CONTEST for the office of county clerk of Harper county. Judgment for *Patterson*, at the June term, 1888. *Moss* brings the case here. The material facts appear in the opinion.

*Geo. E. McMahon, H. C. Finch, W. S. Cade,* and *Hatton & Ruggles,* for plaintiff in error.

*Shepard, Grove & Shepard, Finch & Finch,* and *Sam. S. Sisson,* for defendant in error.

Opinion by SIMPSON, C.: At the general election held in Harper county on the 8th day of November, 1887, Ed. M. Moss and H. E. Patterson were rival candidates for the office of county clerk. Neither was the nominee of a political party, Moss being the candidate on what was termed the "South ticket," and Patterson being the candidate on the "North ticket"; the line of division being a contest over the removal of the county seat from Anthony, south of the center, to Harper, north of the center of the county. At this particular election the relocation of the county seat was not voted upon, but the *virus* of the agitation destroyed party lines,

and subjected every other material interest of the county to its specific ulcers. The canvass of the returns of the election by the board of county commissioners resulted in the declaration that Patterson had received 1,735 votes, and Moss 1,364 votes, and the certificate of election was given to Patterson. These were the only candidates for that office, no one else having received a vote. Moss instituted a contest before the probate judge and two associates, who tried the case, made special findings, and rendered a judgment in his favor. From this judgment Patterson took the case by petition in error and bill of exceptions to the district court of that county, and there the judgment of the contest court was reversed, and Patterson was found and adjudged to have been elected; and to reverse this finding and judgment of the district court, Moss brings the case here. It was argued and submitted in connection with the case of *Peter v. Blue*, just decided, and differs from that case in this single particular, to wit: After evidence had been introduced by and on behalf of Moss, tending to establish a fraudulent conspiracy on the part of the judges and clerks of election at the Harper precinct, and others, to allow to be polled and manufactured a large and illegal vote, and thus destroying the *prima facie* character of the election returns from that precinct, Patterson then produced on the witness stand 355 persons, who testified to their names, ages, places of residence, and length of residence in Harper City; that they voted at the election held in that precinct on the 8th day of November, 1887, for H. E. Patterson for the office of county clerk. These persons testified, so far as we know, or so far as the record discloses, without specific objection by the plaintiff in error. It is not insisted now, so far as we understand counsel, but that Patterson had the undoubted legal right to offer such testimony after the state of the evidence was such as to render it probable that the returns from Harper City were so tainted with fraud that the truth could not be deduced from their face; but the objection insisted upon is, that a fundamental rule governing the admis-

46 — 40 KAS.

sibility of evidence has been violated by counting these votes for Patterson, as must have been done in the district court in order to adjudge that he was elected. Conceding for the purposes of this opinion, that the returns as canvassed by the county board were absolutely correct so far as Moss is concerned, these gave Moss but 1,364 votes. Deducting from Patterson's vote of 1,735, as shown by the canvass, the total vote cast for him in the city and township of Harper, which was 606, and 45 in the east precinct of Lake township, it leaves him 1,084. If the 355 votes that are now in dispute be added to the result, it gives Patterson 1,439 — a majority of 75 over Moss. This ignores the evidence of the persons who testified to their own votes, concerning 57 other persons who were not produced before the contest court, whom they claimed to have seen vote for Patterson at that precinct, and the vote of the east precinct of Lake township. The contest court rejected all the votes of the 355 persons who testified, except the votes of twenty of such persons, for the reason, in many instances, that it was not shown that they were citizens of the United States; or that "it was not shown that they were male persons of 21 years of age and upwards"; or that it was not shown that they had cast legal ballots for Patterson; and for other reasons — the theory of the contest court being, that before they were authorized by law to count the votes of such persons for Patterson they must establish, affirmatively, by satisfactory evidence, that they possessed all the statutory qualifications of electors of the state; and also, that they had cast a legal ballot; it being insisted that the naked declaration of the witness that he voted is not sufficient, but he is required to show that he voted a written or printed ballot, with the name of H. E. Patterson thereon, as a candidate for the office of county clerk. The judgment rendered in the action of the district court of Harper county contains neither special findings of fact nor separate conclusions of law, but is a general finding and judgment in favor of Patterson, and to reverse it here on the record presented, it must either appear that the judgment was wrong as a matter of law, or that there

was no evidence upon which to base the general finding; but this condition of affairs is complicated by the submission and argument of this case with that of *Peter v. Blue*, and the agreement of counsel that the two cases are the same, with the exceptions hereinafter enumerated; the exceptions being, that in this case there are some additional facts, both cases being in common up to a certain point. As we have said, we adopt the reasonings and conclusions of the *Peter v. Blue* case, as long as the facts in both are the same, and we consider only the additional proof offered by Patterson, as to how a certain number of persons voted in Harper City and township. It is fair to assume from this statement, that the judgment of the district court was largely and perhaps entirely controlled by the evidence offered by Patterson in his case, that was not offered by Blue in his own behalf; and this becomes more apparent when it is recollected that this case, by the agreement of the parties made in and before the contest court, was submitted on the evidence introduced in the case of *Peter v. Blue*, with the right of either party to introduce such other evidence as he wished to. The case of *Peter v. Blue* was affirmed in the district court, and in this case the judgment of the contest court in favor of Moss was reversed. It is important, of course, to state the exact manner in which this question is raised in this court. When the case of *Moss v. Patterson* came on for trial in the contest court, under the agreement above set forth, Patterson introduced these 355 persons, and as a rule these questions were asked of the witnesses: "State your name, age, and place of residence? How long have you resided in Harper precinct? Did you vote at the election held in that precinct on the 8th day of November, 1887? For whom did you vote for county clerk?" These questions were all answered, showing the proper age, the required length of residence, and votes for Patterson for county clerk. Usually there was a long cross-examination, and nowhere does the record disclose that any of the questions or answers were objected to, and exceptions saved. After this examination of witnesses had progressed for some time, and probably

one hundred persons had been examined, objections were made to the question for whom the witness voted, and to the answers thereto; but these objections were because the question "called for a conclusion of the witness"—the pith of the objection being that "all the witness could state was that he gave to one of the judges a written or printed ballot, with the names of certain candidates thereon." In this state of the record we could very properly say that these witnesses were allowed to testify without objection, and no exceptions being saved as to the ruling of the contest court, we will not treat them as objected to; but counsel for both sides have exhaustively argued, both in their briefs and orally, the whole question, and seem to think that it is properly presented in the record. In view of the fact that this is an election case, and involves the title to an important county office, public policy seems to require that every phase of the question should be determined, and the result of that election made definite and certain, without reference to mere technical advantages on either side. It might be enough for us to say that even if counsel for the plaintiff in error is right in saying that these persons who testified to having voted for Patterson at the Harper precinct should have first established that they possessed *all* the necessary qualifications of electors, and that we were confronted with a choice between exact obedience to an arbitrary rule governing the admissibility of evidence and the will of the people, the rule must yield to an honest majority, because that is the most potent force under our form of government, and because our statute expressly provides "that the real will of the people may not be defeated by the informality of any officer." It is not pretended in this case by anybody but that these 355 persons voted at Harper precinct for Patterson; all that is said is, that the court below allowed them to testify before they had shown that they possessed all the statutory requirements of electors. The plaintiff in error cross-examined the first twenty offered as to their qualifications in all respects, and then abandoned that line of cross-examina-

tion in a great measure, and now rests his case on the naked
proposition we are considering.

It must be apparent to anyone who will give the subject a
moment's reflection, that the specific objection made by the
plaintiff in error to the question as to whether the witness
voted or not at the election held at Harper precinct ought not
to be sustained upon any theory, because if he did not vote, it
was immaterial whether he was qualified or not, except in a
case where he is called to prove that he voted illegally.   If
he answers that he did vote, then before stating for whom he
voted, ample opportunity is afforded to examine and cross-
examine him as to his qualifications, notwithstanding the pre-
sumption that arises from his statement of voting, that he
voted legally.   There is such a presumption arising in favor
of the innocence of the voter, of the crime of illegal voting.
(McCrary on Elections, 3d ed., § 432.)

"The presumption of the legality of the vote in no way de-
pends upon the omission to challenge or to object to it, or any
presumed knowledge of the judges of the election, but it arises
from the fact of the deposition of the ballot in the ballot-box.
A vote so deposited is presumed to be a legal vote until there
is evidence to the contrary." (*Clark v. Robinson*, 88 Ill. 498.)

It may be said now and here without qualification, that when
it is established as an independent proposition, that a man has
voted, his right to vote will always be presumed.   It seems to
us, under all the circumstances of this particular case, that the
district court obeyed an ordinary dictate of duty in adjudging
that the votes of these 355 persons at Harper precinct should
be counted in favor of Patterson; that the evidence not only
sustained, but compelled such a finding and judgment.   When
a resident of Harper county appears personally before a court
and testifies that his name is James Ferguson; that his age is
thirty-five years; that he has resided for five years last past in
the city of Harper; that he voted at this election for Patterson
for county clerk, it seems like trifling with justice for a contest
court to deliberately find that it is not shown that he was a
male person of 21 years of age, and draw a legal conclusion
from such a finding, that the vote is an illegal one.

The question as to the authenticity of the transcript having been first presented to the district court, and then withdrawn, and now raised here, it will not be considered by this court.

It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.